[No. 6,414.—Department No. 1.]

## COOPERS *v.* MAYOR AND COMMON COUNCIL OF THE CITY OF SAN JOSE.

CONSTRUCTION OF STATUTE—"MAY"—DEFINITION.—In a proceeding for a writ of mandamus to compel the defendants to sell or fix the price of certain lots fronting on a new street opened through the Market Plaza of the City of San José, under the Act of March 4th, 1878, (Stat. 1877–8, p. 163) *held*, that the statute did not enjoin upon the defendants a duty to sell the lots in question, but simply conferred upon them the power to sell 'or not to sell, as they should deem best for the interests of the city.

APPEAL from a judgment for the plaintiff, in the Twentieth District Court.   BELDEN, J.

*Frs. E. Spencer*, for Appellants.

The Act of March 4th, 1878, simply conferred upon the Mayor and Common Council the power to sell the land in their discretion, and, in case they should sell, to give the owners of adjoining lands the right of pre-emption. (*Harris* v. *Supervisors of San Francisco*, Jan. Term, 1878.)

*George F. Baker*, for Respondent.

The right of purchasing these lands was granted by the Legislature to the petitioner and all of his class. (*Montgomery* v.

*Kasson,* 16 Cal. 189; *Grogan* v. *San Francisco,* 18 id. 613; *Slaughter House Cases,* 16 Wall. (U. S.) 65; Cooley's Const. Lim. (4th ed.) pp. 346–7.

"May" means "must," and generally permissive language is mandatory, if individual rights require it to be so read.   (*N. V. R. R. Co.* v. *Napa Co.* 30 Cal. 437;. *People* v. *San Francisco,* 36 id. 595; *Estate of Ballentine,* 45 id. 696; *People* v. *San Luis Obispo,* 50 id. 573; *Supervisors* v. *United States,* 4 Wall. (U. S.) 445; *People* v. *Supervisors,* 51 N. Y. 405; *Mason* v. *Pearson,* 9 How. (U. S.) 259; 1 Dillon's Mun. Corp. § 62.)

That the language of § 2 was intended to be mandatory is clear from the remainder of the statute.

McKINSTRY, J. :

Market Street in San José ran from each end of "Market Plaza"—an enclosed ellipse of greenery, shaded by trees and traversed by gravel walks.   On the 4th day of March, 1878, the Legislature passed an act entitled "An Act to ratify and confirm the acts of the Mayor and Common Council of the City of San José."   (Stats. 1878–8, p. 163.)   The body of the act is as follows:

"Section 1. The Mayor and Common Council of the city of San José are hereby authorized and empowered to open Market Street in said city, through the plaza known as Market Plaza. Said street shall be opened to the same width as other portions of Market Street contiguous to said plaza, to wit: fifty feet on each side of a line running through said plaza, said line to commence at a point in the center line of Market Street where said Market Street forms a junction with San José Street and Guadalupe Street, on the northerly side of said plaza, and running thence southerly through said plaza to a point in the center line of said Market Street where said Market Street forms a junction with San José Street and Guadalupe Street, on the southerly side of said plaza; the whole width of the street to be opened to be one hundred feet.

"Sec. 2. The said Mayor and Common Council, after the opening of said street, may sell the ground of the plaza fronting on either side of said street to parties who own lands around

said plaza and between their respective lots and said street, and said owners of land shall have the privilege of buying such portions of said plaza grounds as are in front of their lots, in preference to all others, provided they do so within the time prescribed by § 4 of this act. The price demanded for said land shall be based upon the actual value thereof, and not on the prices at which other lands belonging to said city have been heretofore sold. Said lands may be sold at either public or private sale, and the proceeds thereof shall be paid into the general fund of said city, and shall be used only for the purpose of building and maintaining public sewers in said city.

" Sec. 3. The Mayor and Common Council shall, after the passage of this act, direct the City Surveyor to survey said Market Street through said plaza, according to the description contained in this act, and also such cross street or streets as may come into or be connected therewith, and shall make plans, diagrams, and specifications of said survey, and present the same to the Mayor and Common Council of said city. Immediately upon the receipt of the plans, diagrams, and specifications of said survey, the Mayor and Common Council shall order the Street Commissioner to proceed at once and open said street, and remove therefrom all fences and other obstructions which may hinder and impede travel thereon.

" Sec. 4. Those parties wishing and having the privilege of buying said plaza shall make application in writing to the Mayor and Common Council, and, after paying the purchase-money, the said Mayor and Common Council shall make deeds of conveyance to said purchasers ; but if the parties owning land around said plaza shall fail, for a period of six months from the passage of this act, to make such application, then it shall be lawful for any person to make such application, and, by complying with the conditions of this act, such party shall be entitled to such conveyance."

On the 27th of January, 1878, the Common Council had passed an order to open Market Street through the plaza. Subsequently to the passage of the act above recited, the Mayor and Council directed the City Surveyor to survey and run the side lines of the street through the plaza ; and—March 25th, 1878 —passed an ordinance accepting and approving the survey, and

declaring the street opened. The petitioner, claiming to be the owner of one of the lots lying "around the plaza," applied in writing, within six months after the passage of the act, to the Mayor and Council, to purchase that portion of the plaza in front of his lot. On their refusal " to sell or fix the price," petitioner went to the District Court for a writ of *mandamus* to compel the Mayor and Common Council to proceed. This appeal is from the judgment of the District Court commanding the Mayor and Common Council, within ten days after service of the judgment, " to fix and *demand* a price for the land."

· The statute does not specially and unconditionally enjoin a duty upon defendants to take the steps they were commanded to take by the judgment of the Court below. It simply confers power upon the Mayor and Common Council to sell, or not to sell, the portions of the plaza excluded from the street, as they shall deem best for the interests of the city. The primary purpose of the law was to " authorize and empower " the Council to extend Market Street through the *plaza*, or—if the previous action of the local government be considered—to ratify the attempted inauguration of proceedings intended to lead to the extension of Market Street through the plaza, and to authorize the completion of that work.

The word " may " in the second section might be read " shall " if it were necessary so to read it to give effect to any clearly expressed intention of the act. But, reading the whole of the statute, it does not appear to have been the purpose of the Legislature to give to those owning lots opposite to the plaza the absolute right or privilege, within six months, to purchase for the " actual value " the lands lying between their lots and Market Street. Such persons—if they make application within six months—are merely given a preference over others, in case the tracts are offered for sale, for prices " demanded." An owner of property opposite the plaza acquired no vested interest in the land lying between his lot and Market Street immediately on the passage of the act ; nor did petitioner acquire a vested right or property in such land merely by making the application within six months after the passage of the act. The act simply gave to him conditionally a personal preference over other persons who may desire to purchase a certain tract. The right to purchase

may be asserted by any person at any time after the lands are offered for sale, without limitation as to individuals, except that a class, of whom petitioner is one, have a preference if their intention to purchase shall have been indicated within a defined period.    The Mayor and Common Council may sell, or may not sell, but if they conclude to sell, the price *demanded* shall be based upon actual value.    The city authorities may be of opinion, in the exercise of their governmental discretion, that it is expedient to reserve the portions of the plaza 'on each side of Market Street as public grounds or parks ; or that the property can at a future time be sold for higher prices ; or that the *sewer fund* does not require the proceeds of such sales.    Any delay in fixing prices and announcing a readiness to sell cannot interfere with the privilege—which we believe to be the only privilege accorded by the act to adjacent land-owners—of securing conditionally a pre-emptive right, in case the land shall ever be offered for sale.    The scheme, beyond the opening of Market Street through the plaza, contemplates a grant of legislative power, which, if employed by the city government—in the exercise of the sound discretion of the local authorities—will result in fixing prices upon all of the lands which may be offered for sale. It is not to be presumed that it was intended  that the determination of actual value should be reached *in court* in each instance where the city and applicant could not agree upon the price which ought to be paid.    The statute requires that the Mayor and Council shall sell the portions of the plaza, not within the limits of the street, only in case they shall deem it expedient to sell; and further, in case they shall deem it expedient to sell, that they shall by ordinance fix the value, or provide a mode of fixing the value, of the lots they shall offer for sale. When the sum thus fixed with reference to any tract shall be tendered by the owner of the adjoining lot—in case he shall have filed his application within six months from the passage of the act—or by anybody else, (in case the adjoining owner shall not have made application within the period limited) it will become the duty of the city officers to convey.

There is nothing in the *second* or *fourth* sections of the act which forbids this interpretation.    The owners have the privilege of buying "in preference to others," but this does not make

it the absolute duty of the city to sell. If an adjacent owner does not make " application " within six months, " any party " may make it, and, by complying with the conditions of the law, become entitled to a conveyance—but only in case the city shall conclude to sell.

Judgment reversed.

Ross, J., and McKee, J., concurred.